**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**FRANCENE LORRAINE TRUJILLO,**

      **Plaintiff,**

    **vs.**                                    **Civ. No. 22-120  KWR/JFR**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 22)[2] filed August 18, 2022, in connection with Plaintiff's *Memorandum of Law in Support of Motion to Reverse or Remand Administrative Agency Decision,* filed October 18, 2022.  Doc. 26.  On January 17, 2023, in lieu of a Response, Defendant filed a *Motion to Remand for Further Administrative Proceedings Pursuant to Sentence Four of 42 U.S.C. §405(G)*.  Doc. 30.  On January 24, 2023,  Plaintiff filed a Response.  Doc. 31.  On February 3, 2023, Defendant filed a Reply.  Doc. 32.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Defendant's Motion is well taken in part and recommends that this matter be remanded for an **IMMEDIATE AWARD OF BENEFITS.**

---

[1] On August 15, 2022, United States District Judge Kea W. Riggs entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  Doc. 25.

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 22), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

## I.  Background and Procedural Record

Plaintiff Francene Lorraine Trujillo ("Ms. Trujillo") alleges that she became disabled on June 29, 2016, at the age of thirty-nine and ten months, because of headaches, depression, trigeminal neuralgia, and post-traumatic stress syndrome.  Tr. 269, 272, 1010.  Ms. Trujillo completed high school in 1994, and has worked as an administrative assistant/receptionist at a local food plant.  Tr. 273, 284.  Ms. Trujillo stopped working on June 28, 2016, after being fired for too many absences and for being late and leaving early.  Tr. 273, 300.

On January 18, 2016, and February 22, 2017, Ms. Trujillo filed applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 227-33, 250-56.  On December 19, 2016, and February 22, 2017, Ms. Trujillo filed applications for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Tr. 234-42, 243-49.  On September 25, 2017, Ms. Trujillo's applications were denied.  Tr. 71, 72, 73-86, 87-100, 143-46, 147-50.  On January 3, 2018, Ms. Trujillo's applications were denied at reconsideration.  Tr. 101, 103, 105-122, 123-40, 161-63.  Thereafter, Ms. Trujillo requested a hearing.  Tr. 168-69.  On December 18, 2018, Administrative Law Judge (ALJ) Cole Gerstner held a hearing.  Tr. 44-70.  Ms. Trujillo was represented by Attorney Laila Zain.[3]  *Id*.  On March 29, 2019, ALJ Gerstner issued an unfavorable decision.  Tr. 11-24.  On December 27, 2019, the Appeals Council issued its decision denying Ms. Trujillo's request for review and upholding the ALJ's final decision.  Tr. 1-6.  On February 26, 2020, Ms. Trujillo timely filed a Complaint seeking judicial review of the Commissioner's final decision.  *See* USDC NM Civ. No. 20-167 – CG (Doc. 1).

---

[3] Ms. Trujillo is represented in these proceedings by Attorney Matthew Robert McGarry.  Doc. 1.

On March 18, 2021, Magistrate Judge Carmen Garza, Presiding by Consent, remanded Ms. Trujillo's case for further consideration.  Tr. 1113-1130.  She found that ALJ Gerstner's reasons for according only "some weight" to Ms. Trujillo's treating physician Dr. Marcus Higi's opinion evidence were unsupported by substantial evidence and that the ALJ had failed to apply the correct legal standard for evaluating treating opinion evidence.[4]  Tr. 1121-29.

On remand, ALJ Lillian Richter held a second hearing on October 26, 2021.  Tr. 1031-75.  Ms. Trujillo was represented by Attorney Hannah J. Yancy Pierce.[5]  On December 20, 2021, ALJ Richter issued an unfavorable decision.  Tr. 1005-1020.  Ms. Trujillo did not seek review from the Appeals Council and filed a timely appeal with the Court on February 21, 2022.  Doc. 1

Defendant seeks remand of this case pursuant to sentence four of 42 U.S.C. §405(g).  Doc. 30.  At issue before the Court is whether this case should be remanded for additional administrative proceedings or remanded for an immediate award of benefits.  For the reasons discussed below, the Court finds that Defendant's Motion is well taken in part and recommends that this matter be remanded for an **IMMEDIATE AWARD OF BENEFITS.**

## II.  <u>Applicable Law</u>

Defendant asserts that because the parties agree that the Court should exercise its power to enter judgment and remand this case, the Court need not resolve whether the ALJ's decision is supported by substantial evidence.  Doc. 32 at 2.  While the Court presumes that the Commissioner in seeking a sentence four remand is conceding that the ALJ's determination is

---

[4] The ALJ discounted Dr. Higi's opinion evidence stating it was not supported by objective evidence, contradicted by Dr. Higi's own treatment notes, and that Ms. Trujillo was non-compliant with her medications and recommended treatments.  Tr. 19-20.

The Court found that the ALJ erred by mischaracterizing Dr. Higi's treatment notes and failing to discuss uncontroverted evidence in Dr. Higi's treatment notes that supported Dr. Higi's assessments.  Tr. 1125-1130.

[5] *See* fn. 3, *supra*.

not supported by substantial evidence and/or that incorrect legal standards were applied, the Court nonetheless applies the sentence four remand standard of review, which requires that the Court review the record and determine whether the ALJ's decision is supported by substantial evidence, or whether the ALJ correctly applied the law.[6] *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not

---

[6] Section 405(g), which governs judicial review of final SSA decisions, authorizes two types of remands: those pursuant to sentence four and those pursuant to sentence six. *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100, 111 S.Ct. 2157, 2163-64, 115 L.Ed.2d 78 (1991). Under sentence four, a district court makes a substantive ruling on the correctness of the Commissioner's decision and may remand for further proceedings in conjunction with "a judgment affirming, modifying, or reversing the decision of the Commissioner." *Melkonyan*, 501 U.S. at 98-101; 42 U.S.C. § 405(g). A sentence six remand is "entirely different." *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990). The district court "does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative determination." *Melkonyan*, 501 U.S. at 98, 111 S.Ct. at 2163. Rather, the district court remands either because (1) the Commissioner requested a remand before filing his answer, or (2) there is "new evidence which is material and [] there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Shalala v. Schaefer*, 509 U.S. 292, 297 n. 2, 113 S.Ct. 2625, 2629, 125 L.Ed.2d 239 (1993). The parties do not argue that the conditions for a sentence six remand apply here.

"reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

District courts have discretion to remand either for further administrative proceedings or for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, courts should consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.' " *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (citation omitted) (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987) (remanding for an immediate award of benefits where, *inter alia*, the application had been pending for more than five years)). When the Commissioner has failed to satisfy her burden of proof at step five, and when there has been a long delay as a result of her erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate. *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five[ ] and the long delay [of at least four years] that has already occurred as a result of the Secretary's erroneous disposition of the proceedings"). The Commissioner "is not entitled to adjudicate a case *ad infinitum* until she correctly applies the proper legal standard and gathers evidence to support her conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

### III.  <u>Analysis</u>

ALJ Richter made her decision that Ms. Trujillo was not disabled at step five of the sequential evaluation. Tr. 1018-1019. ALJ Richter determined that Ms. Trujillo meets the insured status requirement of the Social Security Act through December 31, 2021. Tr. 1010.

ALJ Richter determined that Ms. Trujillo had not engaged in substantial gainful activity since June 29, 2016, her alleged onset date. *Id.* She found that Ms. Trujillo had severe impairments of fibromyalgia, lumbago with sciatica, cervical spine degenerative disc disease, trigeminal neuralgia, migraines, depression and anxiety. *Id.* She found that Ms. Trujillo's bilateral pinguecula, bilateral keratoconjunctivitis sicca, dizziness, dehydration, orthostatic hypotension, GERD, TMJ dysfunction, conjunctivitis, carpal tunnel syndrome, and alleged panic attacks were not severe. Tr. 1011. ALJ Richter determined that Ms. Trujillo's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 1011-1012. Accordingly, the ALJ proceeded to step four and found that Ms. Trujillo had the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally stoop, kneel, crouch, crawl and balance; occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds; and she should avoid exposure to unprotected heights, hazardous machinery, vibration, extreme heat, extreme cold, and concentrated exposure to dust, odors, fumes and pulmonary irritants. The claimant can frequently handle and finger bilaterally. The claimant can perform work that requires no more than frequent near acuity. The claimant can perform simple, routine work in a workplace with no more than occasional changes in the routine work setting and can remain on task for two hours at a time.

Tr. 1012-13. The ALJ determined that Ms. Trujillo was unable to perform any past relevant work, but that considering Ms. Trujillo's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.[7] Tr. 1018-19. The ALJ, therefore, concluded that Ms. Trujillo was not disabled. *Id.*

---

[7] The vocational expert testified that Ms. Trujillo would be able to perform the requirements of representative occupations such as a tube operator, DOT 239.687-014 (4,000 jobs in the national economy), and nut sorter, DOT 521.687-086 (3,000 jobs in the national economy). Tr. 1019.

### A.  Medical Opinion Evidence

#### 1.  Craig Billinghurst, M.D.

On September 23, 2017, nonexamining State agency medical consultant Craig

Billinghurst, M.D., reviewed the medical evidence record at the initial stage of consideration and

assessed that Ms. Trujillo was capable of light exertional work with no additional limitations.[8] [9]

Tr.  82-84, 97-98.

The ALJ accorded some weight to Dr. Billinghurst's opinion.  Tr. 1016.  The ALJ

explained that "the preponderance of the medical evidence of record supports additional

limitations."  *Id.*

#### 2.  Cynthia Kampschaefer, PSYD

On December 21, 2017, nonexamining State agency psychological consultant Cynthia

Kampschaefer, PSYD, reviewed the medical evidence record at reconsideration.  Tr. 116-17,

134-35.  PSYD Kampschaefer prepared a Psychiatric Review Technique ("PRT")[10] and rated the

degree of Ms. Trujillo's functional limitation in the area of understanding, remembering or

applying information as *none*; in the area of interacting with others as *none*; in the area of

maintaining concentration, persistence or pace as *none*, and in the area of adapting or managing

oneself as *none*.  Tr. 116, 134.

---

[8] Light work involves lifting no more than 20 pounds at a time and 10 pounds frequently, and involves a good deal of walking or standing.  20 C.F.R. §§ 404.1567(b) and 416.967(b).

[9] Dr. Billinghurst's exertional limitations were based on "[l]umbosacral spondylosis without myelopathy, Lumbago, Muscle spasm of back, neck pain, Arthropathy of lumbar facet joint, Other intervertebral disc degeneration of lumbar region[.]"  Tr. 83, 97.

[10] "The psychiatric review technique described in 20 CFR §§ 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

The ALJ accorded PSYD Kampschaefer's opinion some weight explaining that it was consistent with claimant's lack of treatment, but that she "assessed [Ms. Trujillo's] mental limitations based on her subjective reports and new medical evidence." Tr. 1016.

### 3.   Sean Neely, D.O.

On January 2, 2018, nonexamining State agency medical consultant Sean Neely, D.O., reviewed the medical evidence record at reconsideration. Tr. 118-20, 136-38. DO Neely affirmed Dr. Billinghurst's initial assessment. *Id.*

The ALJ accorded some weight to Dr. Billinghurst's opinion. Tr. 1016. The ALJ explained that "the preponderance of the medical evidence of record supports additional limitations." *Id.*

### 4.   Marcus Higi, M.D.

Ms. Trujillo began treatment with Marcus T. Higi, M.D., on July 28, 2017. Tr. 569-83. At her initial visit, Ms. Trujillo reported ongoing symptoms related to fibromyalgia, knee pain and hand pain. *Id.* On physical exam Dr. Higi noted mild to moderate distress, spasms in low back, positive right leg raise, positive Tenil sign, positive Phalen sign bilaterally, gait and station slow, range of motion less in fingers, range of motion less in left leg, and pain/crepitus along the knee. Tr. 573. Dr. Higi noted a past medical history of trigeminal neuralgia, fibromyalgia, osteoarthritis, motor vehicle accident victim, lumbago with sciatica, and nicotine dependence. *Id.* On this visit, Dr. Higi diagnosed locked joint of left knee, fibromyalgia, trigeminal neuralgia, fatigue, nicotine dependence, blurring of visual image, and carpal tunnel syndrome. Tr. 574-75. Dr. Higi prescribed various pain medications, provided wrist splints, and made referrals for specialized care. *Id.*

Ms. Trujillo had seen Dr. Higi twelve times between July 28, 2017, and January 18, 2018 (Tr. 517-19, 569-83, 587-96, 601-06, 620-26, 637-43, 649-56, 740-43, 777-79, 780-95, 796-803, 808-13), when Dr. Higi first assessed Ms. Trujillo's ability to do physical and mental work-related activities.[11]  Tr. 679-80, 682-84.  Throughout this six-month period of time, Dr. Higi consistently diagnosed and treated Ms. Trujillo for trigeminal neuralgia, fibromyalgia, osteoarthritis, lumbago with sciatica, depressive disorder and panic attack.  *Id*

Ms. Trujillo saw Dr. Higi another six times from February 6, 2018, through August 15, 2018 (Tr. 814-16, 817-19, 820-27, 836-41, 842-50, 851-57), after which Dr. Higi prepared a "To Whom It May Concern" letter on August 24, 2018, declaring that Ms. Trujillo "meets medical criteria for 100% disability due to difficult to control pain syndromes[.]"[12]  Tr. 687.  These six treatment notes similarly reflect diagnoses and treatment for, *inter alia,* fibromyalgia, trigeminal neuralgia, lumbago with sciatica, depression, anxiety, and insomnia.  Tr. 814-27, 836-57.  On physical exam, Dr. Higi consistently noted facial sensitivity to pain and tender points in multiple areas.  *Id.*  Dr. Higi also noted abnormal gait with slight limp.  Tr. 823, 839, 846.

Ms. Trujillo continued to treat with Dr. Higi and saw him another thirty-two times from September 12, 2018, through November 4, 2020, when he prepared, for the second time, assessments of Ms. Trujillo's ability to do work-related physical and mental activities on November 4, 2020.[13]  Over the course of these approximately twenty-six months, Dr. Higi consistently noted on physical exam that Ms. Trujillo was chronically ill appearing, had facial sensitivity to pain, had tender points in multiple areas, and walked with an abnormal gait.  *See*

---

[11] *See* Section III.A.4.a., *infra*.

[12] *See* Section III.A.4.b, *infra.*

[13] *See* Section III.A.4.c, *infra.*

*e.g.,* Tr. 1452, 1461, 1467, 1474, 1549, 1553-54, 1561, 1813, 1842, 1848.  Dr. Higi also consistently indicated diagnoses and treatment for fibromyalgia, trigeminal neuralgia, lumbago with sciatica, hand joint pain, recurrent moderate depressive disorder, and panic attack.  *See e.g.,* Tr. 1453, 1463, 1469, 1476, 1550, 1555, 1562, 1813, 1831, 1836, 1853.

Following Dr. Higi's November 4, 2020, assessment, Ms. Trujillo continued and continues to see Dr. Higi as her primary treating physician.  Tr. 1882-1917, 2039-68, 2079-89; Doc. 31 at 4, fn. 1.

In sum, from the time Ms. Trujillo established care with Dr. Higi on July 28, 2017, through the most recent treatment notes in the Administrative Record dated September 23, 2021, Ms. Trujillo saw Dr. Higi approximately sixty-five times over the course of four years.

### a.      January 18, 2018, Assessments

On January 18, 2018, Dr. Higi prepared a *Physical Assessment* on Ms. Trujillo's behalf. Tr. 679-80.  Dr. Higi indicated diagnoses of fibromyalgia and trigeminal neuralgia and assessed that Ms. Trujillo's symptoms associated with her impairments were severe enough to *constantly* interfere with attention and concentration to perform simple work-related tasks; that Ms. Trujillo's prescribed medications caused side effects of drowsiness, anxiety, bloating and dizziness; that Ms. Trujillo would need to recline or lie down and/or take breaks during an 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon; that Ms. Trujillo could walk one-half block, sit for one hour and stand for one hour; that she could not lift any weight; and that she could only use her hands, fingers and arms 10% of the time during an 8-hour workday.  Tr. 679-80. Dr. Higi indicated that Ms. Trujillo would likely be absent from work more than four times a month.  *Id.*

On the same date, Dr. Higi also prepared a *Mental Capacity Assessment* on Ms. Trujillo's behalf.  Tr. 682-84.  Dr. Higi assessed that Ms. Trujillo had *no limitations* in her ability to work in coordination with or in proximity to others without being distracted by them.  *Id.*  He assessed that Ms. Trujillo had *slight limitations* in her ability to (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) understand and remember detailed instructions; (4) carry out very short and simple instructions; (5) carry out detailed instructions; (6) maintain attention and concentration for extended period; (7) make simple work-related decisions; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) respond appropriately to changes in the work setting; and (11) set realistic goals or make plans independently of other.  *Id.*  Dr. Higi assessed that Ms. Trujillo had *moderate limitations* in ability to (1) interact appropriately with the general public; (2) ask simple questions or request assistance; (3) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (4) be aware of normal hazards and take appropriate precautions; and (5) travel in unfamiliar places or use public transportation.  *Id.*  Dr. Higi assessed that Ms. Trujillo had *marked limitations* in her ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) sustain an ordinary routine without special supervision; and (3) perform at a consistent pace with a standard number and length of rest periods.  *Id.*  Finally, Dr. Higi assessed that Ms. Trujillo had *extreme limitations* in ability to (1) complete a normal workday without interruptions from psychologically based symptoms and (2) complete a normal workweek without interruptions from psychologically based symptoms.  *Id.*  Dr. Higi explained that

Ms. Trujillo had reactive depressive symptoms due to severe chronic pain from trigeminal neuralgia and fibromyalgia.

ALJ Richter accorded Dr. Higi's January 18, 2018, opinions little weight.  Tr. 1016.  ALJ Richter explained that Dr. Higi's opinions were not consistent with the objective medical evidence of record and Ms. Trujillo's reported activities.  *Id.*

### b.      August 24, 2018, Letter

On August 24, 2018, after seeing Ms. Trujillo eighteen times over the course of thirteen months, Dr. Higi prepared a "To Whom It May Concern" letter describing Ms. Trujillo's medical impairments and related functional limitations and concluding that Ms. Trujillo met medical criteria for 100% disability.  Tr. 687.

ALJ Richter accorded Dr. Higi's August 24, 2018, letter little weight.  Tr. 1017.  She explained that the ultimate finding of disability is reserved to the Commissioner and that Dr. Higi's opinion is inconsistent with the preponderance of the medical evidence and Ms. Trujillo's reported activities.  *Id.*

### c.      November 4, 2020, Assessments

On Dr. Higi prepared a *Physical Assessment* on Ms. Trujillo's behalf.  Tr. 1413-14. Dr. Higi indicated diagnoses of trigeminal neuralgia, lumbago with sciatica, chronic migraine, and PTSD, and assessed that Ms. Trujillo's symptoms associated with her impairments were severe enough to *constantly* interfere with attention and concentration to perform simple work-related tasks; that Ms. Trujillo's prescribed medications caused side effects of drowsiness, dizziness, and sedation; that Ms. Trujillo would need to recline or lie down and/or take breaks during an 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon; that Ms. Trujillo could walk one-

half block, sit/stand/walk for one hour; that she could occasionally lift less than 10 pounds; and that she could only use her hands, fingers and arms 5% of the time during an 8-hour workday. Tr. 679-80.  Dr. Higi indicated that Ms. Trujillo would likely be absent from work more than four times a month.  *Id.*

On the same date, Dr. Higi also prepared a *Mental Capacity Assessment* on Ms. Trujillo's behalf.  Tr. 1415-17.  He assessed that Ms. Trujillo had *no limitation* in her ability to cooperate with others, or ask for help when needed.  *Id.*  He assessed that she had *mild limitations* in her ability to (1) initiate and perform a task the patient knows how to do; (2) make plans independently of others; (3) maintain personal hygiene and attire appropriate to a work setting; and (4) be aware of normal hazards and take appropriate precautions.  *Id.*  Dr. Higi assessed that Ms. Trujillo had *moderate limitations* in her ability to (1) work at an appropriate and consistent pace, or complete tasks in a timely manner; (2) distinguish between acceptable and unacceptable work performance; (3) handle conflicts with others; (4) understand and respond to social cues; (5) respond to requests, suggestions, criticism, correction and challenges; and (6) keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.  *Id.*  Dr. Higi assessed that Ms. Trujillo had *marked limitations* in her ability to (1) follow one- or two-step oral instructions to carry out a task; (2) recognize a mistake and correct it, or identify and solve problems; (3) sequence multi-step activities; (4) use reason and judgment to make work-related decisions; (5) ignore or avoid distractions while working; (6) work close to or with others without interrupting or distracting them; (7) sustain an ordinary routine and regular attendance at work; (8) adapt to changes; (9) manage psychologically based symptoms; and (10) set realistic goals.  *Id.*  Finally, Dr. Higi assessed that Ms. Trujillo had *extreme limitations* in

her ability to work a full day without needing more than the allotted number or length of rest periods during the day.  *Id.*

Dr. Higi explained that Ms. Trujillo has "ongoing anxiety attacks on a daily basis, and she can stop mid-sentence when anxiety creeps up"; that Ms. Trujillo has "significant PTSD which [is] exacerbated by ongoing struggles with chronic pain and is incapable of even working a few hours"; that "[d]ue to PTSD and severe pain issues, she cannot easily adapt to change and is easily distracted, is often quite anxious and hard to stay on task"; and that Ms. Trujillo "can handle some social situations, but she gets easily frustrated due to her PTSD exacerbation by chronic pain."  *Id.*

ALJ Richter accorded Dr. Higi's November 4, 2020, assessments little weight.  Tr. 1017. She explained that his opinions regarding Ms. Trujillo's ability to do work-related physical and mental activities are not supported by his treatment notes or objective medical findings and are inconsistent with a "more recent detailed consultative examination."  *Id.*

### 5.   Tiffany Shadle, CNP

On May 19, 2021, Ms. Trujillo presented to State agency consultative examiner Tiffany Shadle, CNP, to evaluate her physical and/or psychological impairments for purposes of determining disability benefits.  Tr. 1957-64.  Ms. Trujillo complained of PTSD, trigeminal neuralgia, arthritis and migraines.  Tr. 1957.  Ms. Trujillo reported a medical history of fibromyalgia, migraines, sciatica, arthritis and carpal tunnel syndrome.  Tr. 1958.  Ms. Trujillo reported she was able to dress and eat, but required the assistance of a caregiver to bathe, and required the assistance of her daughters and caregiver to cook and clean.  Tr. 1957.  Ms. Trujillo reported fatigue, weakness, double and blurry vision, chest pain, palpitations, shortness of breath,

abdominal pain, joint pain, back pain, joint stiffness and swelling, numbness, tingling, headaches, dizziness, anxiety and depression.  Tr. 1958.

On physical exam, CNP Shadle observed that Ms. Trujillo was able to rise from the waiting room chair independently, walked "scooting both legs like shuffle," and sat comfortably during the exam.  Tr. 1958.  CNP Shadle noted Ms. Trujillo's gait was steady with a shuffle, she was unable to walk on her toes or heels, and unable to tandem gait.  Tr. 1959.  CNP Shadle noted that when standing on both legs, Ms. Trujillo held onto the chair and/or walls to maneuver around the room.  *Id.*  CNP Shadle indicated normal extremity strength, reflex and range of motion.  Tr. 1959-62.  CNP Shadle's joint exam indicated no deformities, tenderness or swelling; no muscle tenderness; and no trigger points.  Tr. 1962.  CNP Shadle noted that Ms. Trujillo "seems weak in the lower body. Decrease ROM of hips bilateral[.]"  *Id.*

CNP Shadle reviewed no medical records and provided no diagnoses.  Tr. 1957, 1962.

Based on her physical exam, CNP Shadle assessed that Ms. Trujillo could frequently lift/carry up to 10 pounds and could occasionally lift/carry up to 20 pounds.  Tr. 1962.  She assessed that Ms. Trujillo could sit and/or stand for about eight hours in a day and could walk for up to four hours.  Tr. 1963.  She assessed that Ms. Trujillo could frequently reach, handle, feel and grasp; and could occasionally bend, stoop, kneel and squat.  Tr. 1963-64.

CNP Shadle noted a normal mental status exam except that Ms. Trujillo "[a]cts as if she cannot remember things."  Tr. 1957.

ALJ Richter accorded CNP Shadle's opinion significant weight.  Tr. 1017.  She explained that her opinion was supported by CNP Shadle's exam and consistent with other medical evidence of record.  *Id.*

**B.** **The ALJ Failed to Apply the Correct Legal Standards in Evaluating the Medical Opinion Evidence**

In her Response to Defendant's Motion, Ms. Trujillo argues that ALJ Richter committed the very same error as ALJ Gerstner, *i.e.,* she failed to properly evaluate treating physician Dr. Higi's opinion evidence. Doc. 31 at 2. Ms. Trujillo further argues that the apparent errors in assigning one-time examining source CNP Shadle's opinion "significant weight" leave no useful purpose in having yet a third ALJ mine this case for additional fact-finding. *Id.* at 2-3. Ms. Trujillo points out that under the regulations governing this case, CNP Shadle is not an acceptable medical source, such that her opinion must be evaluated as an "other medical source." *Id.* at 3. Under that standard, Plaintiff argues, CNP Shadle's opinion can only carry more weight than Dr. Higi's if she "has seen [Plaintiff] more often than the treating source and has provided better supporting evidence and better explanations" for her opinion. *Id.* (citing SSR 06-03p at *5). Plaintiff argues that is not the case here and that it was legal error for ALJ Richter to accord more weight to CNP Shadle's opinion than to Dr. Higi's opinions. *Id.* Additionally, Ms. Trujillo argues that under the regulations governing this case, the ALJ was required to determine if Dr. Higi's opinions deserved controlling weight and, if not, to apply the relevant regulatory factors for weighing medical opinion evidence and to give good reasons for the weight she accorded to Dr. Higi's opinions. Doc. 31 at 4. Ms. Trujillo argues that the ALJ failed to do so here. *Id.*

Ms. Trujillo argues that ALJ Richter's failure to apply the correct legal standards aside, her reasons for according the weight she did are not supported by substantial evidence. Doc. 31 at 6-7. For example, Ms. Trujillo argues that CNP Shadle's assessment that Ms. Trujillo could stand and/or walk 8 hours in an 8-hour workday is not supported by her exam in which she indicated that Ms. Trujillo needed to hold onto a chair while standing, used the walls to

16

maneuver around the examination room, and was unable to do any unsupported walking on her toes or heels.  *Id.*  In contrast, Ms. Trujillo argues that Dr. Higi's assessments are supported by his treatment notes which indicate, *inter alia*, multiple tender points and a prescribed lift chair due to severe difficulty using her legs and arms to move from a seated to standing position.  *Id.* (citing Tr. 1844, 1848).

In sum, Ms. Trujillo asserts that there have been two hearings in this case over the course of more than six years since Plaintiff first applied for benefits; that Dr. Higi's limitations are supported by and consistent with the medical evidence record; and that both ALJ Gerstner and Richter failed to apply the correct legal standards in weighing the medical opinion evidence and have been unable to show "good reasons" why Dr. Higi's opinions should not be entitled to controlling weight.  Doc. 31 at 8.  Ms. Trujillo, therefore, requests this Court remand this matter for an immediate award of benefits.  *Id.*

The Commissioner disagrees and contends that this matter should be remanded for additional administrative proceedings and further fact finding.  Doc. 32 at 2-3.  The Commissioner also contends that "the appropriate focus for this Court should be on whether uncontradicted evidence establishes that Plaintiff was disabled during the period at issue."  *Id.* at 4.  Here, the Commissioner contends, the medical evidence record contains conflicting evidence. *Id.*  For example, the Commissioner contends that the records indicate Ms. Trujillo stopped medications at times due to their side effects and also declined certain medications recommended for treatment; that Ms. Trujillo had positive physical exams at times while having normal exams at other times; and that Ms. Trujillo's trigeminal neuralgia symptoms and migraines showed improvement with certain medication therapy.  *Id.* at 5-6.  The Commissioner also contends that on at least one occasion Ms. Trujillo reported walking "a lot" at a flea market and on another

17

occasion reported exerting herself while caring for her mother, grandmother and husband, albeit with worsening pain and anxiety. *Id.*

The Commissioner also contends there are conflicting medical opinions about what Plaintiff can still do despite her physical and mental impairments. Doc. 32 at 6-7. For example, the Commissioner notes that both nonexamining State agency medical consultants and one-time consultative examiner found that Ms. Trujillo was capable of a full range of light work despite her severe physical limitations. *Id.* Additionally, the Commissioner notes that the nonexamining State agency psychological consultant found that Ms. Trujillo's mental impairments caused no significant functional limitations. *Id.*

For these reasons, the Commissioner contends that it remains possible that the ALJ could find Ms. Trujillo not disabled during the relevant period of time after properly evaluating the medical opinion evidence. Doc. 32 at 7. The Commissioner, therefore, asks the Court to remand this case for further proceedings and leaving the making of specific findings to the ALJ. *Id.*

The ALJ is required to discuss the weight assigned to each medical opinion of record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Generally, the ALJ should accord more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has rendered an opinion based on a review of medical records alone. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."). Indeed, a treating source's opinions are entitled to controlling weight if they are well-supported and consistent with other substantial evidence in

the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  As such, when the record contains

opinions from a treating source, the weighing of medical opinions proceeds through a sequential

process: the ALJ must first determine whether the treating source's opinions deserve controlling

weight. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (describing the analysis as

"sequential" and explaining that "[i]n deciding how much weight to give a treating source, an

ALJ must first determine whether the opinion qualifies for 'controlling weight' "). Even if not

entitled to controlling weight, a treating source's medical opinions are "still entitled to deference

and must be weighed using all of the relevant factors." *Langley*, 373 F.3d at 1120 (alteration and

internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c) (setting forth the

factors to be weighed, comprising (1) examining relationship, (2) treatment relationship,

(3) supportability, (4) consistency, (5) specialization, and (6) other factors).  If the ALJ rejects

the opinions of treating and examining sources in favor of a non-examining source's opinion, he

must provide specific, legitimate reasons for doing so.  *See Watkins*, 350 F.3d at 1301. The

reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinions and the reason for that weight."

*Robinson*, 366 F.3d at 1082 (internal quotation marks omitted).  An ALJ's failure to set forth

adequate reasons explaining why a medical opinion was rejected or assigned a particular weight

and demonstrate that he has applied the correct legal standards in evaluating the evidence

constitutes reversible error.  *See Reyes v. Bowen*, 842 F.2d 242, 244 (10th Cir. 1988) (explaining

that an ALJ's failure to follow the "specific rules of law that must be followed in weighing

particular types of evidence in disability cases ... constitutes reversible error").  Additionally, if

an RFC assessment "conflicts with an opinion from a medical source, the adjudicator must

explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184, at * 7 (Jul. 2, 1996).

The regulations also contemplate the use of information from "other sources," both medical[14] and non-medical,[15] "to show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. §§ 416.902); *see* SSR 06-03p, 2006 WL 2329939, at *2.[16] "Information from these 'other sources' cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source'[17] for this purpose." SSR 06-03p, 2006 WL 2329939, at *2.[18]  An ALJ is required to explain the weight given to opinions from other medical sources and non-medical sources who have seen a claimant in their professional capacity, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* at *6; *see also Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 (10th Cir. 2012) (finding that ALJ was required to explain the amount of weight given to other medical source opinion or sufficiently permit reviewer to follow adjudicator's reasoning).  The weight given to this evidence will vary according to the particular facts of the case, the source of the opinion, the source's qualifications,

---

[14] For claims filed before March 27, 2017, other medical sources are defined as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapist.  SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[15] For claims filed before March 27, 2017, non-medical sources include, but are not limited to, educational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers; public and private social welfare agency personnel, rehabilitation counselors; and spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.  SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[16] SSR 06-3p is rescinded for claims filed on or after March 27, 2017.  SSR 96-2p, 2017 WL 3928298, at *1.  For claims filed after March 27, 2017, all medical sources can make evidence that are categorized and considered as medical opinions.  *Id.* at *2.

[17] For claimed filed before March 27, 2017, "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298.

[18] *See* fn. 16, *supra.*

the issues that the opinion is about, and other factors, *i.e.,* how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other facts that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5.[19]

To begin, the Court addresses the Commissioner's contention that "the appropriate focus for this Court should be on whether uncontradicted evidence establishes that Plaintiff was disabled during the period at issue time." Doc. 32 at 4. This district recently addressed a similar argument raised by the Commissioner when opposing an immediate award of benefits in *Mendoza-Martinez v. Kijakazi*, No. 20-cv-0310 SMV, 2021 WL 5207074 (D.N.M. Nov. 9, 2021). Magistrate Judge Vidmar explained in that case as follows:

> Defendant argues that an immediate award of benefits "is appropriate only when additional fact-finding would serve no purpose *and the record 'fully supports' that Plaintiff is disabled 'as a matter of law.'"* [] (quoting *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir 1989)) (emphasis added). This quote misrepresents the language and import of *Sorenson*, and it mispresents the law. The standard asks when additional fact-finding would serve no useful purpose. Full stop. There is no requirement that the "record fully support[ ] that the Plaintiff is disabled as a matter of law."

*Id.* at *9. The Court finds Magistrate Judge Vidmar's analysis persuasive and similarly finds Defendant's contention regarding the legal standard for awarding immediate benefits, *i.e.,* a finding of disability, is unavailing.

That aside, the Court finds that the ALJ's evaluation of the medical opinion evidence is woefully inadequate and that her explanations for the weight she accorded are not supported by

---

[19] *Id.*

substantial evidence.  Here, without adequate explanation as discussed below, ALJ Richter accorded significant weight to the opinion of a one-time State agency consultative examiner, who was not an acceptable medical source; accorded some weight to the *nonexamining* State agency medical consultant opinions whose record review did not include the vast majority of Dr. Higi's treatment notes and/or opinion evidence; and outright rejected opinion evidence from Ms. Trujillo's treating provider whom she saw approximately sixty-five times over the course of four years.  *See Robinson,* 366 F.3d at 1084 ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."); *see also Langley*, 373 F.3d at 1120 (even if not entitled to controlling weight, a treating source's medical opinions are "still entitled to deference and must be weighed using all of the relevant factors."); *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (explaining that according little weight is effectively rejecting opinion evidence); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(4) and 416.927(c)(1)-(4) (explaining that generally more weight is given to medical opinions of a source who has examined a claimant, is a treating source, has seen a claimant long enough to have obtained a longitudinal picture of impairment, and has knowledge as a treating source about the alleged impairments).

Additionally, ALJ Richer improperly relied on nonexamining State agency psychological consultant Cynthia Kampschaefer, PSYD's steps two and three findings, *i.e.,* that Ms. Trujillo's mental impairments were *nonsevere*, as opinion evidence.  Social Security regulations and rulings instruct that an adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  20

22

C.F.R. § 404.1520a and SSR 96-8p, 1996 WL 374184, at *4.  In other words, PSYD

Kampschaefer's steps two and three findings only served to rate the severity of Ms. Trujillo's

mental impairments and were not a mental RFC assessment.  This distinction was apparently lost

on ALJ Richter when she accorded PSYD Kampschaefer's "opinion" *some weight*, when there

was no opinion evidence to weigh.

Further, the ALJ's explanations for the weight she accorded the medical opinion evidence

defy meaningful review and certainly do not constitute substantial evidence in support of the

Commissioner's disability determination. *See Langley*, 373 F.3d at 1119 (explaining that the ALJ

must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"

for the weight assigned to opinion evidence).  To begin, the ALJ repeatedly cites entire exhibits

from the Administrative Record to support the weight she accorded.  For example, she cites to

Exhibit 35F no less than ten times during her discussion of the opinion evidence.  Tr. 1016-17.

Exhibit 35F consists of 389 pages of treatment notes.  *See Gutierrez v. Colvin*, 67 F. Supp. 3d

1198, 1203 (D. Colo. 2014) (finding that the court is neither required—nor, indeed,

empowered—to parse through the record to find specific support for the ALJ's decision).

Additionally, she cites Exhibits 20E and 24E (Ms. Trujillo's Function Reports) as evidence of

"claimant's other activities," yet fails to specify to what she is referring.[20]  *Id.*  Finally, the ALJ

repeatedly cites Exhibit 38F (CNP Shadle's one-time consultative exam) to support normal

physical exam findings throughout the entirety of the medical evidence record.  Tr. 1016-17.

In sum, the Court finds ALJ Richter fails to demonstrate that she appreciated the

applicable legal standards for evaluating the opinion evidence or that she considered the relevant

---

[20] In her Function Reports, Ms. Trujillo generally describes, *inter alia,* her constant pain, inability to sit, stand or walk
for long periods of time, and feelings of uselessness.  Tr. 1331-39; 1363-1374.

regulatory factors when weighing it.  To the contrary, ALJ Richter appears to have blatantly disregarded the legal standards to which she has to a duty to uphold and apply.  To say this is insufficient fails to capture the extent of ALJ Richter's sloppy and hasty review of the medical evidence record.

C.    **Immediate Award of Benefits**

The legal standards articulated in *Ragland* are applicable here and support remanding this case for an immediate award of benefits.  This case has been pending for six years, since 2017, and concerns whether Plaintiff was disabled beginning on June 29, 2016.  There have been two administrative hearings and Plaintiff is before this Court for the second time.  Plaintiff has met her burden to show disability at the first four steps of the sequential evaluation process after which the burden has shifted to the Commissioner which the Commissioner has failed to meet. In each case, the ALJs have failed to apply the correct legal standards in evaluating the medical opinion evidence.  Moreover, the medical evidence is complete and neither party has represented that further medical evidence is available.  In other words, there is no additional fact finding to be had.  As such, the Court finds that additional administrative proceedings would merely delay the receipt of benefits.

The Commissioner "is not entitled to adjudicate a case *ad infinitum* until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion."  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).  As in *Ragland*, therefore, the undersigned recommends the Court exercise its discretion and remand this case for an immediate award of benefits.

## IV.  <u>Recommendation</u>

For all of the reasons stated above, the Court finds that Defendant's Motion to Remand

for Further Administrative Proceedings Pursuant to Sentence Four of 42 U.S.C. §405(G) (Doc.

30) is well taken in part.  The Court recommends that this matter be remanded for an

**IMMEDIATE AWARD OF BENEFITS**.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of
these Proposed Findings and Recommended Disposition they may file written objections with
the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any
objections with the Clerk of the District Court within the fourteen-day period if that party
wants to have appellate review of the proposed findings and recommended disposition.  If
no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**